IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AQUATHERM, LLC; CORNERSTONE TECHNOLOGIES, LLC; STAG II LINDON, LLC; STAG INDUSTRIAL, INC.; and VIVINT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CENTIMARK CORPORATION, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 2:16-cv-01097-DN <br><br> District Judge David Nuffer |

Defendant CentiMark Corporation ("CentiMark") has filed a motion ("Motion")[1] for summary judgment under Fed. R. Civ. P. 56(a) against Plaintiffs Aquatherm LLC, Cornerstone Technologies LLC, and Vivint Inc. (collectively, "Tenants") and Plaintiffs Stag II Lindon LLC and Stag Industrial Inc. (collectively, "Stag"). Because there is no genuine dispute as to any material fact and CentiMark is entitled to judgment as a matter of law, the Motion is GRANTED.

---

[1] Defendant CentiMark Corporation's Motion for Summary Judgment re: Time and Contract Barred Claims ("Motion"), docket no. 28, filed June 5, 2018; *see* Plaintiffs Aquatherm LLC, Stag II Lindon, and Stag Industrial Inc.'s Response in Opposition to Defendant's Motion for Summary Judgment ("Liberty's Response"), docket no. 32, filed August 6, 2018; Plaintiffs Cornerstone Technologies LLC and Vivint Inc.'s Response in Opposition to Defendant CentiMark Corporation's Motion for Summary Judgment re: Time and Contract Barred Claims ("Hartford and Travelers' Response"), docket no. 33, filed August 6, 2018; Defendant CentiMark Corporation's Reply to Plaintiffs Cornerstone Technologies LLC and Vivint Inc.'s Opposition to Motion for Summary Judgment, docket no. 36, filed August 30, 2018; Defendant CentiMark Corporation's Reply to Plaintiffs Aquatherm, Stag II Lindon, and Stag Industrial Inc.'s Opposition to Motion for Summary Judgment, docket no. 37, filed August 30, 2018; Plaintiffs Cornerstone Technologies LLC and Vivint Inc.'s Joinder in Plaintiffs Aquatherm LLC, Stag II Lindon and Stag Industrial Inc.'s Response in Opposition to Defendant CentiMark Corporation's Motion for Summary Judgment, docket no. 48, filed October 23, 2018; *see also* Index to Exhibits on Motion for Summary Judgment, docket no. 35, filed August 30, 2018.

elm

## UNDISPUTED MATERIAL FACTS

Based on the record and evidence presented, there is no genuine dispute as to any of the following material facts.

Stag owned a commercial building complex in Lindon, Utah, portions of which—referred to as buildings 2 and 2.5—were leased to the Tenants.[2] On September 10, 2013, Stag entered an agreement ("Agreement") with CentiMark, a general roofing contractor, to perform work on the roof of the complex, including buildings 2 and 2.5.[3] Among other things, the Agreement states:

> § 5.5 Unless specifically precluded by the Owner's property insurance policy, the Owner and Contractor waive all rights against (1) each other and any of their subcontractors, suppliers, agents and employees, each of the other; and (2) the Owners Consultant, Owners Consultant's consultants and any of their agents and employees, for damages caused by fire or other causes of loss to the extent covered by property insurance or other insurance applicable to the Work.
> . . . .
> § 6.2 THE WORK
> The term "Work" means the construction and services required by the Contract Documents, and includes all other labor, materials, equipment and services provided, or to be provided, by the Contractor to fulfill the Contractor's obligations.
> . . . .
> § 8.3 SUPERVISION AND CONSTRUCTION PROCEDURES
> § 8.3.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences, and procedures, and for coordinating all portions of the Work.
> . . . .
> § 8.5 WARRANTY
> The Contractor warrants to the Owner and Owners Consultant that: (1) materials and equipment furnished under the Contract will be new and of good quality unless otherwise required or permitted by the Contract Documents; (2) the Work will be free from defects not inherent in the

---

[2] *See* Deposition of David Barker ("Barker Deposition"), at 96, docket no. 28-3, filed June 5, 2018; Complaint ¶ 22, docket no. 2-2, filed October 26, 2016. Buildings 2 and 2.5 are also sometimes referred to, respectively, as buildings E and F. *See* Liberty's Response, *supra* note 1, ¶¶ 3-4, at 8.

[3] Standard Form of Agreement Between Owner and Contractor for a Residential or Small Commercial Project ("Agreement"), at 3, docket no. 28-4, filed June 5, 2018; *see* Motion, *supra* note 1, ¶¶ 4, 9, 21-22, 27, at 5-9.

    quality required or permitted; and (3) the Work will conform to the requirements of the Contract Documents.

 . . . .
§ 8.12 INDEMNIFICATION
    To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Owner, Owners Consultant, Owners Consultant's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Contractor, a subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

 . . . .
§ 17.2. WARRANTY. Notwithstanding any provisions to the contrary, the only warranties and guarantees to be provided are CentiMark Corporation Non-Prorated Limited Roof Warranty, incorporated by this reference and attached hereto in sample form as part of Exhibit A. During the warranty time periods, set forth in CentiMark's Proposal attached hereto as Exhibit A, all issues relating to the warranty and guarantee of Contractor's Work shall be governed by the terms and conditions of said Warranty.[4]

The warranty referenced in § 17.2 ("Warranty") of the Agreement states:

 I. WHAT THIS WARRANTY COVERS:
  (a) CentiMark . . . warrants to the Purchaser ONLY that CentiMark will repair any leaks resulting from defects in the materials or workmanship in the roof services (services) performed by CentiMark, to the building noted above, for the period of time, noted above, from the Warranty Date. . . .
 . . . .
 IV. EXCLUSIVITY OF WARRANTY AND LIMITATION OF REMEDIES:
  (a) CENTIMARK EXPRESSLY DISCLAIMS ALL EXPRESS OR IMPLIED WARRANTIES INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER IMPLIED WARRANTY. THIS EXPRESS LIMITED WARRANTY CONTAINS THE SOLE AND EXCLUSIVE WARRANTY AND REMEDY OF PURCHASER AGAINST

---

[4] Agreement, *supra* note 3, §§ 5.5, 6.2, 8.3, 8.3.1, 8.5, 8.12, 17.2, at 4, 6-8, 12.

|     |     | CENTIMARK. THERE IS NO EXPRESS WARRANTY OTHER THAN THAT STATED IN THIS WARRANTY. |
| --- | --- | --- |
|     | (b) | This Warranty does not cover, and in no case shall CentiMark be liable for, any special, incidental or consequential damages based on breach of warranty, breach of contract, negligence, strict liability, tort or other legal theory. . . . Incidental and consequential damages shall not be recoverable even if the remedies or actions provided herein are determined to have failed of their essential purposes. |
|     |     | . . . . |
| V.  | TIME LIMIT FOR BRINGING SUIT: ANY ACTION BY PURCHASER, TO ENFORCE ANY CLAIMS AGAINST CENTIMARK, MUST BE COMMENCED WITHIN ONE (1) YEAR FROM THE DATE THAT A DEFECT IN MATERIALS OR WORKMANSHIP, OR OTHER BREACH OR ANY OTHER CLAIM IS DISCOVERED OR REASONABLY SHOULD HAVE BEEN DISCOVERED. |     |
| VI. | MISCELLANEOUS: |     |
|     |     | . . . . |
|     | (c) | This Warranty Agreement is understood to be the complete and exclusive warranty agreement between the Purchaser and CentiMark, superseding all prior agreements, whether oral or written, and all other communications between the parties relating to the subject matter of this Warranty. . . .[5] |

CentiMark began the Work in or about October 2013.[6] According to Stag, performance of the Work "required [CentiMark] to manipulate, move, and reinstall . . . existing heating cables," which a third-party had previously installed on the roof.[7] CentiMark completed the Work by no later than March 9, 2014.[8]

---

[5] *Id.* at 62; *see* Non-Prorated Limited Roof Warranty – Acrylic Systems and Roof Coatings, at 10, 12, docket no. 28-7, filed June 5, 2018; Barker Deposition, *supra* note 2, at 70-71, 73-76 Motion, *supra* note 1, ¶ 24, at 8.

[6] *See* Weekly Timesheets, at 1, docket no. 32-4, filed August 6, 2018.

[7] Complaint, *supra* note 2, ¶ 28; *see id.* ¶ 25.

[8] Liberty's Response, *supra* note 1, ¶ 6, at 8; *see* Complaint, *supra* note 2, ¶ 32 (indicating that CentiMark "completed its work" "[a]bout three months" before the fire); Barker Dep., *supra* note 2, at 65; Weekly Timesheets, *supra* note 6, at 17. Although Stag and the Tenants argue that, "by all accounts, [CentiMark] had not fully completed its work on the roof by the time the fire occurred," there is no evidence to support this assertion. Liberty's Response, *supra* note 1, at 17-18.

On March 18, 2014, a fire occurred on the roof of the building complex.[9] The fire was confined to buildings 2 and 2.5.[10] Following an investigation, the fire department issued a report on or about April 9, 2014, tracing the origin of the fire "to the location [on the roof] where the heat-tape was run down the inside of the . . . drain pipe inside the wall between buildings 2 and 2.5."[11] According to the report, CentiMark's "act of removing the old heat-tape to fix the gutter and then re-installing the same old heat-tape back into the gutter may have damaged the old heat-tape enough to cause a short-circuit and started a fire."[12]

Stag and the Tenants submitted claims to their respective insurers—American Economy Insurance Co., Travelers Property Casualty Co., Liberty Mutual Insurance Co., and Hartford Fire Insurance Co. (collectively, the "Insurers")—for damages resulting from the fire.[13] The Insurers conducted their own investigations regarding the cause of the fire in March and April 2014.[14] At that time they learned that "roof repairs [by CentiMark] had been ongoing for three to four weeks prior to the fire," and that there were "blue sparks coming from the heat tape in the rain gutter" when the fire occurred.[15] The Insurers ultimately made substantial payments to Stag and the Tenants based on their insurance claims.[16] There is no evidence that either Stag or the Tenants

---

[9] Motion, *supra* note 1, ¶ 10, at 6; Liberty's Response, *supra* note 1, ¶¶ 1-2, at 8.

[10] Liberty's Response, *supra* note 1, ¶ 1, at 8.

[11] Motion, *supra* note 1, ¶ 16, at 6; *see id.* ¶ 17, at 7.

[12] Exhibit E, at 39, docket no. 28-5, filed June 5, 2018.

[13] Complaint, *supra* note 2, ¶ 40.

[14] *See* Exhibit E, *supra* note 12, at 2-10; *see also* Motion, *supra* note 1, ¶¶ 13-19, at 6-7.

[15] Exhibit E, *supra* note 12, at 4-6.

[16] Complaint, *supra* note 2, ¶ 41. There is no evidence that any payment the Insurers made to Stag or the Tenants was subject to a reservation of rights. There is also no evidence that the Insurers ever disputed that any damage resulting from the fire for which they made payments was covered by the applicable insurance policies.

incurred any damages from the fire for which the Insurers have not fully compensated them.[17] Stag and the Tenants admit that they have been "made whole by the respective insurance payments from their insurers."[18]

On September 19, 2016, the Insurers, in the name of Stag and the Tenants, commenced this subrogation action against CentiMark for (1) negligence, (2) breach of contract, (3) breach of warranty, (4) negligent misrepresentation, and (5) contractual indemnification.[19] The last three of these five claims are brought in the name of Stag only.[20]

## DISCUSSION

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] A dispute is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[22] A fact is "material" if "it is essential to the proper disposition of [a] claim."[23] In ruling on a motion for summary judgment, the evidence and all reasonable inferences are viewed in the light most favorable to the nonmoving party.[24]

---

[17] Motion, *supra* note 1, ¶¶ 29-31, at 10; *see* Complaint, *supra* note 2, ¶ 43.

[18] Complaint, *supra* note 2, ¶ 43.

[19] Motion, *supra* note 1, ¶ 11, at 6; Complaint, *supra* note 2, ¶ 1.

[20] *See* Complaint, *supra* note 2, at 9-10.

[21] FED. R. CIV. P. 56(a). The parties repeatedly cite to and rely on Utah law to describe the standard for summary judgment. *See, e.g.*, Motion, *supra* note 1, at 10-11; Liberty's Response, *supra* note 1, at 10; Hartford and Travelers' Response, *supra* note 1, at 9-10. The summary judgment standard is a procedural issue, and federal law governs procedural issues in diversity cases. Accordingly, federal law, *not* Utah law, governs the standard for summary judgment in this diversity case.

[22] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[23] *Id.*

[24] *Id.*

CentiMark seeks summary judgment dismissing all claims with prejudice based on Section 5.5 of the Agreement, the Warranty, and Utah Code § 78B-2-225.[25] Because CentiMark is entitled to judgment as a matter of law under Section 5.5 and § 78B-2-225, this Memorandum Decision and Order does not address CentiMark's arguments regarding the Warranty.

**CentiMark is entitled to judgment under Section 5.5 of the Agreement.**

The Tenants' breach-of-contract claim and all of Stag's claims fail as a matter of law based on Section 5.5 of the Agreement, which reads:

> Unless specifically precluded by the Owner's property insurance policy, the Owner and Contractor waive all rights against . . . each other . . . for damages caused by fire or other causes of loss to the extent covered by property insurance or other insurance applicable to the Work.[26]

The plain language of Section 5.5 is complete, clear, and unambiguous.[27] This section waives the parties' claims for all fire damage covered by any insurance applicable to the Work.[28]

There is no evidence that any property insurance policy "specifically preclud[es]" the waiver set forth in Section 5.5.[29] It is undisputed that Stag's and the Tenants' insurance policies applied to the Work and covered all damages that the Insurers now seek to recover.[30] Indeed, the

---

[25] The parties repeatedly quibble over whether § 78B-2-225 is a statute of limitations or a statute of repose. It is both. *See Craftsman Builder's Supply, Inc. v. Butler Mfg. Co.*, 1999 UT 18 ¶¶ 26-27, 974 P.2d 1194. However, this Memorandum Decision and Order only addresses the statute's limitations aspect.

[26] *See supra* note 3.

[27] The plain language of Sections 5.1–5.4 of the Agreement is also unambiguous and, in any event, there is no genuine issue of material fact regarding it for purposes of the Motion. Although Stag and the Tenants argue that "CentiMark's failure to secure appropriate insurance . . . may be sufficient to preclude summary judgment," there is no evidence that CentiMark failed to do so. Liberty's Response, *supra* note 1, at 26.

[28] Section 5.5's waiver is materially different from the waiver at issue in *Hemingway v. Construction by Design Corp.*, 2015 UT App 10, 342 P.3d 1135, which only applied to damages covered by a specific kind of insurance. *Hemingway*, 2015 UT App 10 ¶¶ 2, 9 n.4. In contrast, Section 5.5's waiver applies to damages covered by *any* "insurance applicable to the Work."

[29] *See* Barker Deposition, *supra* note 2, at 61.

[30] *See supra* notes 16-18 and accompanying text. Stag and the Tenants admit that their insurance policies applied to the Work. *See* Liberty's Response, *supra* note 1, at 27. There is no evidence that this insurance did *not* cover their

7

Insurers are only seeking to recover "[t]o the extent of and . . . the amount of their respective payments and pursuant to their respective insurance policies."[31] Accordingly, Section 5.5's waiver applies, and CentiMark is entitled to judgment as a matter of law on all of Stag's claims and also on the Tenants' breach-of-contract claim.

## CentiMark is entitled to judgment under Utah Code § 78B-2-225.

Utah Code § 78B-2-225(3)(b) is a Utah statute limiting actions arising out of improvements to real property. It requires negligence-based actions against a "provider" to "be commenced within two years from the earlier of the date of discovery of a cause of action or the date upon which a cause of action should have been discovered through reasonable diligence."[32] A "provider," for purposes of this statute, is "any person contributing to, providing, or performing studies, plans, specifications, drawings, designs, value engineering, cost or quantity estimates, surveys, staking, construction, and the review, observation, administration, management, supervision, inspections, and tests of construction for or in relation to an improvement."[33] An "improvement" is "*any building*, structure, infrastructure, road, utility, or other similar man-made change, addition, modification, or alteration to real property."[34]

---

damages resulting from the Work. There is also no evidence that any damages were caused by activities unrelated to the Work. While CentiMark may not have been hired specifically to work on the heat tape/cables, Stag and the Tenants admit that performance of the Work "required [CentiMark] to manipulate, move, and reinstall the existing heating cables." Complaint, *supra* note 2, ¶ 28; *see also* Deposition of Canaan Sanchez, at 54-55, docket no. 33-2, filed August 6, 2018. They also admit that "[t]he damages, losses, expenses and attorneys' fees" they are presently seeking to recover "arose from the work performed by CentiMark." Complaint, *supra* note 2, ¶ 84.

[31] Complaint, *supra* note 2, ¶ 42.

[32] UTAH CODE § 78B-2-225(3)(b).

[33] *Id.* § 78B-2-225(1)(f).

[34] *Id.* § 78B-2-225(1)(d) (emphasis added).

Stag and the Tenants argue that the term "improvement" does not encompass "pre-existing structure[s]."[35] Their argument is inconsistent with the plain language of the statute, which states, without qualification, that an improvement includes "any" building or structure. While Stag and the Tenants cite various cases to argue otherwise, many of those cases concern entirely distinct statutes and issues.[36] And language from others is taken out of context.[37]

As a matter of law, buildings 2 and 2.5 of Stag's building complex fall within the statutory definition of an "improvement." It is undisputed that they are buildings or structures. Also, as a matter of law, CentiMark falls within the statutory definition of a "provider." The undisputed evidence shows that CentiMark contributed to construction—repairing and replacing roofing—for or in relation to buildings 2 and 2.5. The Agreement repeatedly describes the Work as construction.[38] There is no evidence that this construction was performed for any purpose other than in relation to an improvement (i.e., buildings 2 and 2.5).[39] Accordingly, the limitations period of Utah Code § 78B-2-225(3)(b) applies to Stag and the Tenants' negligence and negligent misrepresentation claims.

"[I]n cases not involving allegations of concealment, inquiry notice on the part of the plaintiff is enough to trigger the running of the limitations period."[40] Because there is no

---

[35] Liberty's Response, *supra* note 1, at 15.

[36] *See, e.g.*, *Coleman v. Dillman*, 624 P.2d 713 (Utah 1981) (statute of frauds); *Total Restoration, Inc. v. Merritt*, 2014 UT App 258, 338 P.3d 836 (mechanic's lien statute); *All Clean, Inc. v. Timberline Props.*, 2011 UT App 370, 264 P.3d 244 (same); *Daniels v. Deseret Fed. Sav. & Loan Ass'n*, 771 P.2d 1100 (Utah Ct. App. 1989) (same).

[37] *See, e.g.*, *Thelin v. NuTone, LLC*, No. 2:11-cv-1046-DAK, 2013 WL 5651559 (D. Utah Oct. 16, 2013) (concerning the manufacturer of a product).

[38] *See, e.g.*, Agreement, *supra* note 3, §§ 6.2, 7.4, 7.4.1, 7.4.3, 8.2, 8.3; *see also, e.g., id.* at 50-52, 55.

[39] *See State Farm Fire & Cas. Co. v. Sundance Dev. Corp.*, 2003 UT App 367, ¶ 10, 78 P.3d 995 (distinguishing between activities performed "for or in relation to an improvement" and activities performed "for some other purpose").

[40] *Russell/Packard Dev., Inc. v. Carson*, 2003 UT App 316, ¶ 14, 78 P.3d 616 (citations and emphasis omitted).

allegation of concealment in this case, the two-year statute of limitations on the negligence and negligent misrepresentation claims began to run no later than April 2014 when the Insurers' investigations put Stag and the Tenants on notice of CentiMark's involvement. Given that the Insurers did not commence this action until September 2016, more than two years after April 2014, the negligence and negligent misrepresentation claims are untimely under § 78B-2-225(3)(b). Although this time limitation "does not apply to any action against any person in actual possession or control of the improvement . . . at the time any defective or unsafe condition of the improvement proximately causes the injury for which the action is brought,"[41] there is no evidence that CentiMark was in actual possession or control of any portion of buildings 2 and 2.5 when the fire occurred. Accordingly, CentiMark is entitled to judgment as a matter of law on Stag and the Tenants' negligence and negligent misrepresentation claims.

## ORDER

THEREFORE, IT IS HEREBY ORDERED that the Motion[42] is GRANTED.

A judgment will be entered dismissing this action with prejudice.

Signed April 12, 2019.

BY THE COURT:

David Nuffer
United States District Judge

---

[41] UTAH CODE § 78B-2-225(8).

[42] Docket no. 28, filed June 5, 2018.